STATE OF WEST VIRGINIA

SUPREME COURT OF APPEALS

FILED

November 3, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**CABELL HUNTINGTON HOSPITAL,**
**Employer Below, Petitioner**

**vs.)    No. 15-0294** (BOR Appeal No. 2049690)
             (Claim No. 2011030215)

**MICHAEL WAYNE STANLEY,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Cabell Huntington Hospital, by Toni J. Minner, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Michael Wayne Stanley, by Michael Miskowiec, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated March 4, 2015, in which the Board affirmed, in part and reversed and remanded, in part, a July 25, 2014, Order of the Workers' Compensation Office of Judges. The Board of Review agreed with the Office of Judges on all the issues except a permanent partial disability award. The Board of Review determined that no physician of record apportioned correctly and remanded that issue for further evaluation. In its Order dated July 25, 2014, the Office of Judges reversed several claims administrator's decisions. The Office of Judges reversed the claims administrator's April 11, 2013, decision and approved the C6-7 surgery. The Office of Judges reversed the claims administrator's May 9, 2013 decision and approved the request for a referral to a pain management consult with Anthony Alberico, M.D. The Office of Judges reversed the claims administrator's July 3, 2013, decision to grant a 9% permanent partial disability award and granted a 16% permanent partial disability award. The Office of Judges reversed the claims administrator's February 21, 2014, decision and added the diagnosis of a C6-7 disc herniation. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record

1

presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Stanley, a cardiac sonographer, was performing an echocardiogram on a severely overweight patient for Cabell Huntington Hospital on February 24, 2011, when he strained his neck. Mr. Stanley reported to the emergency room at Cabell Huntington Hospital where he was diagnosed with a cervical strain with radiculopathy and a neck strain. Mr. Stanley applied for workers' compensation benefits and his claim was held compensable on March 16, 2011, for cervical and thoracic strains. Mr. Stanley was then evaluated by his treating physician, Bryan Payne, M.D. Dr. Payne initially opined that Mr. Stanley did not suffer from brachial neuritis. Dr. Payne indicated that cervical traction helped with numbness in his fingers, but Mr. Stanley still had burning in his left arm. On June 23, 2011, Dr. Payne performed surgery on Mr. Stanley. Dr. Payne noted at the time of his surgery that Mr. Stanley had a C5-6 left-sided herniated disc.

On December 21, 2011, Dr. Payne indicated Mr. Stanley was complaining of neck pain radiating down his arm. Dr. Payne found evidence of C5 radiculopathy and suggested an MRI. On January 19, 2012, Mr. Stanley had an MRI. Based upon the MRI, Dr. Payne submitted a diagnosis update requesting that cervical disc displacement, cervical spondylosis and brachial neuritis be added as compensable conditions. Kelly Agnew, M.D., performed a record review on May 23, 2012. Dr. Agnew opined that Mr. Stanley only suffered a thoracic and cervical sprain as a result of his employment and further opined that the surgery Mr. Stanley underwent was related to degenerative changes and not to the compensable injury. The claims administrator denied Mr. Stanley's request to add cervical disc displacement, cervical spondylosis, and brachial neuritis as compensable conditions of this claim. Mr. Stanley protested this decision to the Office of Judges. The Office of Judges determined that Mr. Stanley's cervical disc displacement at C5-6 should be added as a compensable condition of this claim. However, the Office of Judges agreed with the claims administrator that cervical spondylosis and brachial neuritis should not be added as compensable conditions of the claim. The Board of Review and this Court agreed.[1]

From October 1, 2012, through January 17, 2013, records indicate that Mr. Stanley was treated by Dr. Alberico. Dr. Alberico's impression was herniated nucleus pulposus at C6-7. He suggested that Mr. Stanley continue to treat conservatively or he could consider a decompression at C6-7. On January 8, 2013, Mr. Stanley underwent surgery at C6-7. Mr. Stanley was discharged from post-operative care on January 9, 2013, and instructed to follow up with Dr. Alberico in one week.

Dr. Alberico issued treatment records from February 21, 2013, through July 26, 2013, which showed that Mr. Stanley was seen multiple times for post-operative follow-ups. Mr. Stanley reported radicular symptoms into the left arm with paresthesias and a trigger point at the left scapula. X-rays of the cervical spine showed good alignment of the vertebrae with good positioning of the interbody fusion. Dr. Alberico prescribed a muscle relaxant. Dr. Alberico

---

[1] See *Cabell Huntington Hospital v. Michael Wayne Stanley,* No. 13-0448 (May 7, 2015)(memorandum decision).

released Mr. Stanley to return to work without restrictions on March 11, 2013. On April 11, 2013, the claims administrator denied a request for payment of the January 8, 2013, surgery at C6-7 because it determined it was not related to the compensable injury. The claims administrator then denied a request from Dr. Alberico for Mr. Stanley's pain management on May 9, 2013.

On June 4, 2013, Dr. Agnew issued an independent medical evaluation. Dr. Agnew's impression was diffuse degenerative changes. Dr. Agnew concluded that all of Mr. Stanley's degenerative changes were related to the passage of time and predated the compensable injury of February 24, 2011. Dr. Agnew opined that two cervical surgeries were performed to treat age-related spondylosis and were not related to the compensable injury of February 24, 2011. Dr. Agnew found Mr. Stanley to be at maximum medical improvement. Dr. Agnew found Mr. Stanley to have 11% whole person impairment under Category IV-D of Table 75 of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) and had 18% whole person impairment for abnormal range of motion of the cervical spine. Dr. Agnew apportioned all of Mr. Stanley's Table 75 impairment and half of his range of motion impairment to pre-existing degenerative or spondylotic changes. Accordingly, Dr. Agnew concluded that Mr. Stanley had only 9% whole person impairment attributable to the compensable injury. The claims administrator granted Mr. Stanley a 9% permanent partial disability award based upon Dr. Agnew's report on July 3, 2013.

Treatment notes from Dr. Alberico dated July 26, 2013, stated that Mr. Stanley's surgery on January 8, 2013, at the C6-7 level was related to his compensable injury and the surgery at C5-6. Bruce Guberman, M.D., issued an independent medical evaluation of Mr. Stanley on August 27, 2013. Dr. Guberman opined that the disc herniation, acquired stenosis at the C6-7 level, and the surgery were causally related to the injury of February 24, 2011. Specifically, Dr. Guberman opined that it was likely that the injury of February 24, 2011, caused damage to the C6-7 disc. He further opined that the prior surgery at the C5-6 level made disc progression at the C6-7 level more likely. Although Mr. Stanley had reached maximum medical improvement, Dr. Guberman opined that he required ongoing intermittent trigger-point injections to maintain his current level of functioning and to allow him to continue working. Dr. Guberman found Mr. Stanley to have 13% whole person impairment under Table 75 of the American Medical Association's *Guides*, and 7% whole person impairment for abnormal cervical range of motion. Dr. Guberman apportioned 3% of his 7% range of motion impairment to pre-existing degenerative changes, leaving 4% whole person impairment for the compensable injury of February 24, 2011. Combining the Table 75 and range of motion ratings, Dr. Guberman found Mr. Stanley to have a combined total of 16% whole person impairment. Dr. Guberman placed Mr. Stanley under Cervical Spine Category IV of West Virginia Code of State Rules § 85-20-Table E (2006) for an impairment range of between 25 to 28%. Adjusting his impairment rating to comply, Dr. Guberman found Mr. Stanley to have 25% whole person impairment for the compensable injury of February 24, 2011.

On October 23, 2013, Dr. Agnew was deposed and testified that he performed an independent medical examination of Mr. Stanley on June 4, 2013. He noted that he also performed a record review of the claim on May 23, 2012, and June 29, 2012. Dr. Agnew stated

that a cervical MRI performed in January of 2012 revealed a disc osteophyte complex at C6-7; however, the January of 2012 MRI did not reveal any traumatic changes that could be ascribed to the compensable injury of February 24, 2011. In January of 2013, Dr. Alberico performed surgery at the C6-7 level. Dr. Agnew opined that the January of 2013 surgery was performed to address the aging changes seen at C6-7. Dr. Agnew noted that the January of 2013 operative report also revealed calcification overlying the disc fragment, which indicated a chronic issue that had been there a long time. Dr. Agnew testified that Mr. Stanley had returned to work and was receiving only minimal treatment for his neck at the time of his evaluation. Although Mr. Stanley demonstrated some breakaway weakness in the left upper extremity, the weakness was widespread and did not correlate with a specific nerve root compromise. Mr. Stanley also reported some decreased sensation in the left upper extremity which spanned multiple nerve roots and did not follow an anatomic pattern. Dr. Agnew testified that the C6-7 surgery performed in January of 2013 was not related to the compensable injury of February 24, 2011. In that regard, Dr. Agnew noted that imaging studies showed obvious degenerative changes at the C6-7 level less than a month after the compensable injury. Furthermore, Dr. Agnew testified that there were no imaging findings to suggest that the compensable injury had structurally altered the C6-7 level in a way that would have aggravated or accelerated the natural history of the aging process. Dr. Agnew stated that there was simply no way to ascribe the C6-7 surgery to the compensable injury. Additionally, Dr. Agnew opined that a pain management consult was not appropriate in Mr. Stanley's case. Specifically, Dr. Agnew noted that there was no evidence of any complication from surgery that would prompt specific further intervention. He also noted that there was no objective evidence of lingering neurologic compromise at which any pain management intervention might be directed. Finally, Dr. Agnew noted that at the time of his June 4, 2013, examination of Mr. Stanley, he was not experiencing any symptoms that would require any significant treatment.

The Office of Judges affirmed the claims administrator's April 11, 2013, and May 9, 2013, decisions on January 14, 2014. In the interim period, Dr. Alberico requested that a C6-7 disc herniation be added as a compensable diagnosis in the claim and the claims administrator denied that request on February 21, 2014. On June 24, 2014 the Board of Review remanded these issues back to the Office of Judges for further consideration.

The Office of Judges found that the C6-7 disc herniation was causally related to Mr. Stanley's employment. The Office of Judges pointed out that Dr. Alberico opined that the C6-7 surgery was related to Mr. Stanley's compensable injury, as the C6-7 disc had been exacerbated by his previous surgery at the C5-6 level. The Office of Judges determined that Mr. Stanley relied upon Dr. Alberico's opinion that the C6-7 herniation was related to the compensable injury, while Cabell Huntington Hospital relied upon Dr. Agnew's opinion that the C6-7 herniation was related to a pre-existing degenerative condition. The Office of Judges then examined the differing opinions. Dr. Alberico recognized the calcification overlying the C6-7 disc fragment. He also noted that the imaging studies taken less than a month after the compensable injury showed degenerative changes at C6-7. However, he opined that the C6-7 herniation was causally related to the compensable injury. Dr. Agnew performed an independent medical evaluation and came to the conclusion that the herniation was the result of a degenerative process and was not work-related. The Office of Judges noted that, unlike Dr.

4

Agnew, Dr. Alberico performed the surgery on Mr. Stanley's C6-7 disc fragment, performed multiple evaluations, tracked his progress, and was his treating physician. The Office of Judges concluded that Dr. Alberico had a better opportunity to determine how the injury was sustained. Furthermore, the Office of Judges found that the fact that Mr. Stanley had no neck or upper extremities symptoms prior to the compensable injury of February 24, 2011, further supported Dr. Alberico findings and discredited Dr. Agnew's assertions.

The Office of Judges then turned to the issue of the proper permanent partial disability award. The Office of Judges found that Dr. Guberman's report more closely complied with the American Medical Association's *Guides* and West Virginia Code of State Rules § 85-20, than Dr. Agnew's independent medical evaluation. The Office of Judges recognized that although Dr. Agnew found Mr. Stanley to have 11% whole person impairment under Table 75 of the American Medical Association's *Guides*, he apportioned all of Mr. Stanley's Table 75 impairment to pre-existing degenerative changes. Because Dr. Agnew was of the opinion that Mr. Stanley's cervical surgeries were performed for pre-existing spondylosis and unrelated to the compensable injury, he concluded that no impairment under Table 75 was indicated in the claim. However, the Office of Judges found that contrary to Dr. Agnew's findings, Mr. Stanley's C5-6 and C6-7 disc herniations have both been found to be compensable diagnoses. Accordingly, the Office of Judges discredited Dr. Agnew's impairment assessment. The Office of Judges was also unsatisfied with Dr. Agnew's failure to adjust his rating under as required by West Virginia Code of State Rules § 85-20-64 (2006). The Office of Judges then examined Dr. Guberman's impairment assessment. The Office of Judges found that his assessment was in compliance with the American Medical Association's *Guides* and the requirements of West Virginia Code of State Rules § 85-20-64. The Office of Judges also found that his assessment was also consistent with the medical evidence of record and the compensable diagnoses in the claim. Dr. Guberman found Mr. Stanley to have 13% whole person impairment under Table 75 of the American Medical Association's *Guides* and 4% whole person impairment for abnormal range of motion of the cervical spine. Dr. Guberman then placed Mr. Stanley under Cervical Spine Category IV of West Virginia Code of State Rules § 85-20-Table E and adjusted Mr. Stanley cervical rating to 25% whole person impairment. As a result, the Office of Judges granted an additional 16% permanent partial disability award.

Next, the Office of Judges turned to the issue of medical treatment. The Office of Judges determined that the January 8, 2013, cervical surgery performed by Dr. Alberico at the C6-7 level and the request for a pain management consult were medically related and reasonably required to treat his compensable diagnoses. The Office of Judges determined that the January 8, 2013, surgery was performed to address the herniation at the C6-7 level. Because the Office of Judges found the C6-7 herniation compensable earlier in the Order, it determined that the corrective surgery was medically related and reasonably required to treat it. In regard to the pain clinic consultation, it was noted that Mr. Stanley underwent an anterior cervical discectomy and fusion at C6-7 level on January 8, 2013. Mr. Stanley was then seen by Dr. Alberico for post-operative follow-up in February of 2013. At that time, Dr. Alberico indicated that trigger point injections would need to be considered if Mr. Stanley did not improve with medication over the next few weeks. Thereafter, in a progress note dated March 14, 2013, Dr. Alberico indicated that Mr. Stanley was still having pain in the left scapula and trigger-point tenderness in the cervical

area. He further noted that the previously prescribed medication had not provided Mr. Stanley with much relief. Consistent with his prior plan of care, Dr. Alberico recommended a referral to Ahmet Ozturk, M.D., for cortisone injections. The Office of Judges determined given that Mr. Stanley underwent an anterior cervical discectomy and fusion at the C6-7 level in January of 2013, and was still symptomatic at the time of the March 14, 2013, Dr. Alberico's request for a pain management consult was medically related and reasonably required for treatment.

The Board of Review agreed with all the material findings of fact of the Office of Judges but did not affirm all of its conclusions. The Board of Review disagreed with the Office of Judges on the permanent partial disability issue. The Board of Review noted that both independent medical evaluation evaluators apportioned out pre-existing degenerative disc disease before they placed Mr. Stanley in West Virginia Code of State Rules § 85-20-Table E. As a result, the Board of Review reversed insofar as it granted an additional 16% permanent partial disability award and remanded for good cause shown back to the Office of Judges with instructions to issue a new time frame to allow for full and complete development of the evidence. The Board of Review further instructed the Office of Judges to obtain supplemental reports from Drs. Agnew and Guberman to comply with its ruling. The Board of Review affirmed the remaining provisions of the Office of Judge's Order.

After review, we agree with the conclusions of the Board of Review. Pursuant to Syllabus point three of *SWVA, Inc., v. Edward D. Birch*, ___ W. Va. ___, 787 S.E.2d 664 (2016):

> [i]n fixing the amount of a permanent partial disability award for a compensable injury suffered by a workers' compensation claimant who has a noncompensable preexisting definitely ascertainable impairment, the correct methodology pursuant to W. Va. Code § 23–4–9b (2003) is to deduct the impairment attributed to the preexisting injury from the final whole person impairment rating as determined under West Virginia Code of State Rules § 85-20.

It was correct for the Board of Review to remand for further permanent partial disability evaluations because none of the physicians of record followed the standards laid out in *Birch*. On the issue of the compensability of the C6-7 disc herniation, the Office of Judges and Board of Review were not in error in finding it was a compensable condition because there was sufficient evidence to support their conclusions. On the issue of further medical treatment, the cervical surgery performed by Dr. Alberico at the C6-7 level and the request for a pain management consult were medically related and reasonably required to treat his compensable diagnoses. As a result, the decision of the Board of Review was not in error and should be affirmed.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: November 3, 2016**


**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

7